UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM FLETCHER,<br><br>      Petitioner,<br><br> v.<br><br>RANDY BLADES,<br><br>      Respondent. | Case No. 1:15-cv-00166-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is an Amended Petition for Writ of Habeas Corpus (Dkt. 53), filed by Idaho state prisoner William Fletcher ("Petitioner" or "Fletcher"), challenging Petitioner's Ada County conviction of felony injury to a child. The Court previously dismissed, as procedurally defaulted, all of the claims in the Amended Petition with the exception of Claim 4(e). (Dkt. 78.) That claim is now fully briefed on the merits and ripe for adjudication. (*See* Dkt. 87, 88.) The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 13, 55.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 25.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is

unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief on Claim 4(e).

1.    **Background**

Petitioner was initially charged with two counts of lewd conduct with a minor under the age of sixteen. (State's Lodging A-1 at 6-7.) Pursuant to a binding plea agreement, Petitioner entered an *Alford* plea to a single reduced charge of felony injury to a child, based on Petitioner's "rubbing the vaginal opening" of the minor victim. (*Id*. at 74, 75-84.) Petitioner was sentenced to ten years in prison with three years fixed but was placed on a rider. After an unsuccessful period of retained jurisdiction, the trial court relinquished jurisdiction and ordered execution of Petitioner's sentence. (*See* Dkt. 78 at 2.) The state appellate court affirmed.

Petitioner pursued post-conviction relief and filed numerous motions in his underlying criminal case, but the trial court dismissed the post-conviction petition and denied the motions. Again, the state appellate court affirmed. Petitioner has since been released on parole.

In the instant habeas case, only Claim 4(e) remains for adjudication on the merits. In that claim, Petitioner asserts that his attorney rendered ineffective assistance by allegedly leading Petitioner to believe that "local racial prejudice would make trying to put on a defense a futile gesture." Petitioner claims that as a result of this advice, his plea of guilty was invalid. (Dkt. 53 at 10.)

## 2. Habeas Corpus Standard of Law

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons— both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), a petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. De novo review is also required where the state appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

Generally, even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish

that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Claims of ineffective assistance of counsel are included in this category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) ("[W]here a habeas petition governed by AEDPA alleges ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), we apply *Strickland*'s prejudice standard and do not engage in a separate analysis applying the *Brecht* standard.").

## 3.     Discussion

Claim 4(e) asserts that trial counsel rendered ineffective assistance by advising Petitioner that he should plead guilty because he would be automatically convicted if he went to trial.

### A.     *Relevant Facts*

According to Petitioner, he told his attorney multiple times that he was innocent and that he did not want to plead guilty; Petitioner also rejected multiple plea offers. On September 28, 2013, defense counsel informed Petitioner that "the state was given [sic] him one last opportunity to accept [the] previously rejected plea of felony injury to a

child." (Dkt. 88 at 5.) Petitioner again refused. However, counsel then told Petitioner that, even though there was no evidence against him, "It will be the victim's word ... against yours, and no jury would believe your testimony or evidence. You will be convicted automatically if you go to trial." (*Id*.)

Petitioner asked how that was possible, as he would have to be found guilty beyond a reasonable doubt. His attorney then told him "to look around where you are, it's Idaho and it happens that way; so it's either [a] plea offer or [an] automatic life sentence." (*Id*.)

Petitioner "took all this from trial counsel as a racial comment and their [sic] was no way he would receive a fair trial." (*Id*.) After counsel again advised Petitioner to take the plea offer, Petitioner agreed. Petitioner states that, when counsel left the jail, Petitioner understood the plea agreement as follows:

> Original charges of lewd conduct with a minor under 16 dropped[.] Plea Alford type plea not admitting guilt to injury to a child felony for only causing mental suffering to victim unintentionally[.] 1 year fixed 4 years indeterminated [sic], probation, mental health court/veteran court.

(*Id*. at 6.) Petitioner later learned that the amended information still contained a sexual component, even though the crime of felony injury to a child is not necessarily considered a sex offense, and that the agreed-upon sentence was longer than he had believed. (*Id*.) However, Petitioner entered the *Alford* plea nonetheless.

Petitioner claims that counsel's statements intimated to him "that local racial prejudice would make putting on a defense a futile gesture," that this advice constituted

ineffective assistance of counsel, and that his guilty plea was therefore not knowing, intelligent, and voluntary. (*Id*.)

**B.      Clearly-Established Law**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel ("IAC") must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to warrant relief on an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the *Strickland* Court instructed:

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has

met the burden of showing that the decision reached would
reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result
must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112. To show prejudice
based on deficient performance of counsel in a case where, as here, the petitioner pleaded
guilty, the petitioner "must show that there is a reasonable probability that, but for
counsel's errors, he would not have pleaded guilty and would have insisted on going to
trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The foregoing standard, giving deference to counsel's decision-making, is the de
novo standard of review. Another layer of deference—to the state court decision—is
afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims
on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different
> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this
Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190
(internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 11**

### C.    State Court Decision

The Idaho Court of Appeals framed Claim 4(e) as follows, which corresponds to how Petitioner has framed the claim in the Amended Petition:

> On appeal, Fletcher ... contends that he raised the possibility of a valid claim by alleging that his attorney advised him that he would be automatically convicted if he went to trial based on where he was, which he interpreted to mean that he, an African-American man, could not get a fair trial in Idaho due to racial prejudice....
>
> ....
>
> Fletcher contends that his trial counsel's implication that racial prejudice would determine a jury verdict is sufficient to prevent his guilty plea from being knowing, intelligent, and voluntary.... According to Fletcher, he asked counsel why he should take the plea offered by the state despite his claim of innocence, to which his counsel allegedly responded that Fletcher was looking at a life sentence, that the jury would usually believe what the child says, that it had happened before, and that he was in Idaho.... Fletcher claims his trial counsel told Fletcher he would be automatically convicted if he went to trial. When he asked why, Fletcher's attorney allegedly told him to look at where he was—Idaho. He interpreted these comments to mean that he could not receive a fair trial due to purported racial prejudice in the local community.

(State's Lodging C-6 at 3, 5.)

The court of appeals assumed, without deciding, that Petitioner's counsel in fact said what Petitioner alleged. The court also stated, in a footnote, that Petitioner's interpretation of counsel's comments faced a "significant difficulty." (*Id.* at 5 n.3.) Instead of being aimed at Petitioner's race,

> ... the comments could be interpreted to mean that the surrounding community, based on prevailing moral views,

has a low tolerance for claims of sexual abuse of minor children, making a trial unwise. Such advice would not constitute ineffective assistance of counsel or otherwise render a guilty plea unknowing, unintelligent, or involuntary.

(*Id*.) The court went on to conclude that Petitioner had not shown "that his interpretation of [counsel's] vague comments and reliance thereon was reasonable." (*Id*. at 6.)

Noting that comments about local racial prejudice could, in some circumstances, constitute ineffective assistance and render a guilty plea invalid, the court held that the comments by Petitioner's counsel were "insufficient on [their] own to show that [the] guilty plea was not knowing, intelligent, and voluntary." (*Id*. at 6.) In doing so, the court distinguished *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir. 1984), an Eighth Circuit decision upon which Petitioner had relied:

> In *Thomas,* the Eighth Circuit Court of Appeals affirmed a district court's conclusion in a habeas corpus proceeding that the petitioner had been denied effective assistance of counsel because, among other things, counsel gave the defendant (an African-American man) and his family the impression that his trial would be futile because of racial prejudice. That case is readily distinguishable from the circumstances alleged here. The *Thomas* Court noted the extensive and explicit statements regarding racial prejudice, including that the petitioner would have to prove his innocence and that a jury would never believe an African-American man's testimony over that of a Caucasian victim. Here, the alleged comments were neither extensive nor explicit.

(State's Lodging C-6 at 5 (citations omitted).) The Idaho Court of Appeals noted that "the context in which [the comments by Petitioner's attorney] were made differs substantially from the time and circumstances of 1984 Arkansas in *Thomas*":

> Indeed, Fletcher has provided no factual or legal basis to suggest that his interpretation of the advice prevented his

guilty plea from being knowing, intelligent, and voluntary. He has also not alleged that his trial counsel repeatedly pressured and persuaded Fletcher to plead guilty on the basis of pervasive racial prejudice in the community, nor was there any indication that Fletcher's trial counsel held any racial bias against Fletcher or minorities in general, both of which were critical to the Eighth Circuit's holding in *Thomas.*

(*Id*. at 6.)

The court also held that Petitioner's claim—that his plea was not knowing, voluntary, and intelligent because of his reliance of counsel's comments—was "contradicted by the record":

> Prior to the change of plea hearing, Fletcher filled out a guilty plea advisory form in which he acknowledged, among other things, that his counsel had done everything he asked her to do. At the change of plea hearing, Fletcher stated that he understood the charge against him, the nature of the plea agreement, the penalty he faced, and the rights he was forfeiting. He further acknowledged that he was satisfied with his attorney's representation. We conclude that, under the circumstances present in this case, a reasonable person with adequate means would not be willing to retain counsel at his or her own expense to conduct a further investigation into this claim. Even with the assistance of counsel, there is no possibility that Fletcher's vague assertion could be developed into a valid claim.

(*Id*.) For these reasons, the Idaho Court of Appeals affirmed the dismissal of Claim 4(e).

### D.      *Petitioner Is Not Entitled to Relief on Claim 4(e)*

The Idaho Court of Appeals appropriately cited *Strickland* as the standard governing IAC claims. (*Id*. at 4.) Thus, its decision was not contrary to clearly-established federal law under § 2254(d)(1).

Nor was the state court's rejection of Claim 4(e) an unreasonable application of clearly-established Supreme Court precedent. Even if the court had misapplied *Thomas*—which it did not—*Thomas* is an Eighth Circuit case and, therefore, does not constitute clearly-established federal law under AEDPA. *Marshall*, 569 U.S. at 64. Moreover, the court of appeals reasonably considered the competing potential interpretations of counsel's comments and concluded that Petitioner had presented only "an unsupported, bare claim that trial counsel made veiled and unsubstantiated allusions to the prevalence of racial prejudice in the community." (*Id*. at 6.) The court also reasonably relied on Petitioner's own statements in his guilty plea advisory form and at the change-of-plea hearing to find that Petitioner understood his situation, was satisfied with his attorney, and had knowingly decided to plead guilty. Petitioner has not rebutted the presumption of correctness of that finding under § 2254(e)(1).

Finally, this Court would conclude, even on de novo review, that Petitioner has not demonstrated *Strickland* prejudice from counsel's comments. Petitioner was facing two counts of lewd conduct with a child under the age of sixteen, each of which carried a potential sentence of life without parole. *See* Idaho Code § 18-1508 (stating the punishment for lewd conduct as "imprison[ment] in the state prison for a term of not more than life"). The plea agreement limited Petitioner's maximum sentence to ten years, and he was eligible for parole after three. Petitioner's own, self-serving statements that he would not have pleaded guilty simply do not establish a reasonable probability that he "would have insisted on going to trial" but for his counsel's comments. *Hill*, 474 U.S. at 59.

### 4.    Conclusion

The Idaho Court of Appeals' rejection of Claim 4(e) was not objectively unreasonable under AEDPA and, therefore, must be denied. Because all of Petitioner's other claims have already been dismissed, final judgment will be entered in favor of Respondent.

## ORDER

**IT IS ORDERED:**

1.    The Amended Petition for Writ of Habeas Corpus (Dkt. 53) is DENIED IN PART and DISMISSED IN PART, and this entire action is DISMISSED with prejudice.

2.    The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: January 2, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge